John J. Nelson (SBN 317598)
jnelson@milberg.com
**MILBERG PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Telephone: (858) 209-6941

John D. Hughes*
jhughes@milberg.com
**MILBERG PLLC**
800 South Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: 202-932-7015

*Pro Hac Vice forthcoming*

*Counsel for Plaintiff Sanjay
Sharma and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANJAY SHARMA, Individually and on behalf of the Amgen Services Inc., Master Benefits Plan, and on behalf of all the similarly situated participants and beneficiaries of the plan, <br><br> Plaintiff, <br> v. <br><br> AMGEN INC., <br><br> Defendant. | Case No.: 2:26-cv-04205 <br><br> CLASS ACTION COMPLAINT <br><br> 1. **ERISA – Statutory Violation Unlawful Surcharge** <br> 2. **ERISA – Statutory Violation Failure to Notify** <br> 3. **ERISA – Breach of Fiduciary Duty** |

**CLASS ACTION COMPLAINT**

Plaintiff Sanjay Sharma ("Plaintiff"), individually, and on behalf of all other similarly situated participants, their beneficiaries and estates, and on behalf of the Amgen Inc. Employee Benefit Plan ("the Plan") bring this action under 29 U.S.C. §§ 1132(a)(2) and (3) against Defendant Amgen Inc., ("Amgen" or "Defendant"). Plaintiff makes the following allegations based upon personal knowledge as to his own actions and upon information and belief as to all other matters.

## I. INTRODUCTION

1.      This lawsuit challenges Defendant's unlawful practice of discriminating against certain employees based on their health conditions by requiring payment of a "tobacco surcharge" which results in higher prices for health insurance for employees suffering nicotine addictions in plans offered by Amgen in violation of the Employee Retirement Income Security Act ("ERISA") of 1974.

2.      In recent years, many U.S. employers have chosen to impose higher health plan premiums on employees who smoke or use other tobacco products, treating tobacco use as a justification for charging substantially more for the same coverage. These "tobacco surcharges"—sometimes rebranded as discounts or credits—can add hundreds or thousands of dollars per year to the cost of coverage based solely on an employee's personal health status. Under ERISA however, such increased premium differentials based on health factors, such as tobacco or nicotine addiction constitute

**CLASS ACTION COMPLAINT**

unlawful discrimination and are permitted only as part of a compliant "wellness program," and are subject to strict regulatory criteria.

3.     ERISA's anti-discrimination provisions prohibit any group health plan from charging an extra premium or fee based on any health status related factor, including tobacco use, unless that fee is part of a bona fide "wellness program." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1). The statute provides the Departments of Labor, Health and Human Services, and Treasury (the "Departments"), with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182. Accordingly, the Departments have issued clear regulatory criteria that "**must be satisfied**" to qualify for the statutory exception or safe-harbor, which they may invoke only if they can affirmatively demonstrate full compliance with all these strict requirements in response to claims that their program is discriminatory. Courts must defer to an agency's interpretation of its own regulations, if that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework, *Auer v. Robbins*, 519 U.S. 452 (1997), ensuring that plans cannot evade ERISA's anti-discrimination protections by selectively or improperly applying these rules.

4.     While tobacco surcharges are cloaked in rhetoric about improving employee health and well-being, the reality of these purported "wellness programs" demonstrates the need for stringent regulatory safeguards. Despite implementation by numerous employer sponsored health insurance and benefits plans across the country,

2

**CLASS ACTION COMPLAINT**

there is little evidence that tobacco surcharges are effective in encouraging smokers to quit or that wellness programs effectively reduce healthcare costs through health improvement. Research suggests that even low surcharges can cause tobacco users to opt out of coverage.[1] Instead, the increased fees and premiums charged by employers often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs, shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal of these safeguards is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

---

[1] "Tobacco Surcharges". American Lung Association, May 2025. https://www.lung.org/getmedia/c63d5d26-fc33-47a7-93b8-fb39c915e899/Tobacco-Surcharges.pdf (last accessed 4/9/2026).

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). Tobacco surcharges associated with reduced ACA marketplace enrollment. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

3
**CLASS ACTION COMPLAINT**

5.      Upon allegations from a participant that a surcharge-based wellness program violates ERISA's anti-discrimination provisions, the burden shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (a defendant claiming an exemption from ERISA's prohibitions bears the burden of proving the exemption's applicability.).

6.      To qualify a tobacco surcharge as a compliant wellness program, among other requirements, a company must offer a "reasonable alternative standard", usually in the form of a tobacco cessation program, the completion of which allows participants to obtain the "full reward" by avoiding the entire surcharge. In other words, a reasonable alternative standard will refund a tobacco user all tobacco surcharges paid during the operative plan year or allow them to avoid paying it in the first place.

7.      ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[3] The Department of Labor ("DOL") has made

---

[3] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (the "Final Regulations") ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, **the same, full reward must be provided to that individual** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

4

**CLASS ACTION COMPLAINT**

clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . . ." *Id.*, 33160 (emphasis added).

8.     Here, the Plan does not provide the required reasonable alternative standard in all plan materials describing the surcharge, providing no option where it is described in its 2021-2023 benefits guides, other than electing non-tobacco user status next year. Consequently, Defendant's tobacco surcharge program is a non-compliant penalty structure rather than a lawful wellness incentive and violates ERISA's anti-discrimination provisions by imposing additional costs on employees who use tobacco products and cannot meet the legal requirements for a bona fide wellness program.

9.     Additionally, notice of the availability and features of the reasonable alternative standard *must* be disclosed "***in all plan materials*** describing the terms of" a health contingent wellness program, such as a tobacco surcharge. 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C § 300gg-4(j)(3)(E). An employer implementing a tobacco surcharge program in its benefits plan, as Amgen has, must provide a compliant notice that the reasonable alternative standard exists for

5

**CLASS ACTION COMPLAINT**

nicotine or tobacco users in *every* Plan communication discussing the premium differential, including contact information and a statement that the recommendations of participants' physicians will be accommodated.

10. While a wellness program which satisfies the essential regulatory requirements of the Final Regulations may qualify for a statutory safe-harbor, these criteria "***must be satisfied***" to be lawful under ERISA. 78 Fed. Reg. 33158, 33160. The core deficiency of Amgen's wellness program is that it does not offer a reasonable alternative standard that provides the "full reward" to all participants who satisfy that alternative standard, as explicitly required by Section 702 of ERISA, 29 U.S.C. § 1182, 42 U.S.C. § 300gg-4(j)(3)(D), and 29 C.F.R. § 2590.702(f)(4). Amgen's Plan instead levies an egregiously high monthly fee of 150 dollars ($1,800 annually) on any employee, and any enrolled member of the employee's family, who discloses their status as a tobacco user. Amgen collects these ill-gotten funds as windfall income, and upon information and belief retains them in its own accounts and earning interest, rather than offsetting premiums, expenses, or claim costs for the benefit of the Plan or its participants.

11. By failing to provide an alternative standard or a mechanism for retroactive reimbursement to those who satisfy that standard, Amgen operates an unlawful surcharge program that denies Plan participants who use tobacco the opportunity to avoid the penalty as required by law. This is not a minor technical

**CLASS ACTION COMPLAINT**

failure—it is a fundamental violation of the regulation's core purpose: ensuring that all participants have an opportunity to avoid the tobacco surcharge and receive the same financial benefit as those who meet the initial standard (i.e., non-smokers).

12.     Defendant has failed to include proper notice in all Plan materials discussing the tobacco surcharges of the actions participants might take to avoid the surcharge as expressly required by 45 C.F.R. § 146.121(f)(4)(v). Not only did Amgen fail to include a description of the terms of an alternative standard, but it also failed to include contact information for obtaining the alternative standard. Amgen failed to include reference to any alternative standard in its widely available Benefits Decision Guides, despite the Departments' clear instructions that, for ERISA plans, such alternative standard programs must be disclosed in these documents if compliance affects premiums. 78 Fed. Reg. 33158, 33166 ("a plan disclosure that references premium differential based on tobacco use . . . must include this disclosure"). These standalone violations of the Final Regulations disqualify Amgen from asserting the affirmative defense in response to the allegations herein that its tobacco surcharge program is discriminatory and violates ERISA. Upon information and belief, Amgen failed to include the required notice in all Plan/Benefits materials as required. Again, because Defendant's wellness program does not satisfy the necessary regulatory criteria for a "program[] of health promotion," Defendant's wellness program fails to

qualify under the statutory safe harbor, meaning the tobacco surcharge they impose on participants is unlawful and discriminatory in violation of ERISA.

13. This Complaint alleges that Amgen imposes a discriminatory and unlawful tobacco surcharge. Amgen bears the burden of proving that its tobacco surcharge program fully complies with every regulatory requirement under ERISA and its implementing regulations, including providing a clearly defined, reasonable alternative standard that allows all participants to avoid the surcharge and receive a full refund if they satisfy the alternative. Amgen cannot meet this burden because its Plan does not appear to offer any alternative standard at all. Without a reasonable alternative standard, Amgen's surcharge is not a lawful wellness incentive, but an impermissible penalty imposed on employees based on a health factor. Even if an alternative standard does exist, Amgen fails to provide clear notice of its availability in all plan materials discussing the surcharge. Its failure to offer and communicate a reasonable alternative standard makes its surcharge program facially unlawful under ERISA, and no amount of *post hoc* justifications can cure this fundamental defect.

14. The strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, and are not simply a pretextual subterfuge to discriminate based on a health factor and shift costs to higher risk individuals." 29 C.F.R. § 2590.702(f)(3)(iii). Amgen's Plan is not a "program of health promotion or disease prevention" as required by ERISA but instead an

impermissible cost-shifting scheme that unlawfully penalizes employees for their health status. 29 C.F.R. § 2590.702(f)

15.    The Plan fails to clearly establish a reasonable alternative standard, and engages in punitive fines against employees who disclose that they are tobacco users. The plan does not notify employees that such any alternative is available, and therefore does not ensure that employees who complete the alternative receive the "full reward," and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations. Plan participants also lack any ability to change the election that they are a Tobacco user until the next open enrollment period, which may be up to a year in the future.

16.    Plaintiff was an employee of Defendant who paid the unlawful tobacco surcharges to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiff and continues to impose such a burden on those similarly situated.

17.    While acting in the capacity of a fiduciary as Plan Sponsor and administrator, Defendant collected and retained the unlawful tobacco surcharge from its employees. Rather than placing these funds in a trust account for the benefit of the Plan and its participants, Defendant retained these proceeds for itself. Because available plan materials provide no indication that Amgen contributed these proceeds to the Plan in a manner that would offset costs to the Plan itself or fund the Plan's

9

**CLASS ACTION COMPLAINT**

claims and administrative expenses, upon information and belief Defendant has always retained all proceeds of the Plan's tobacco surcharge as a part of its own assets, although discovery is needed to confirm. Thus, the Plan has been harmed by Defendant's retention of the funds which are commingled with Defendant's own accounts.

18. Defendant's retention of the tobacco surcharge funds increased Defendant's own monies and saved the money it would have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit.

19. Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Defendant from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendant is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants, as well as the Plan itself, and to comply with federal law. Plaintiff, on behalf of himself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

**CLASS ACTION COMPLAINT**

## II. PARTIES

20.     Plaintiff was employed by Amgen, Inc. until June of 2021 and obtained health insurance through the employer sponsored Health Plan offered by Amgen. Plaintiff paid a monthly surcharge in addition to Defendant's health insurance plan premiums from at least the beginning of the class period until June 2021.

21.     Plaintiff is a resident of the state of California.

22.     By virtue of participation in the health and welfare plan offered by Amgen while employed by Defendant, and payment of the wrongfully discriminatory surcharge, Plaintiff is eligible to receive additional benefits under the Plan as a result of Defendants' breaches of fiduciary duty and violation of provisions of ERISA.

23.     Thus, Plaintiff is a participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7).

24.     Defendant Amgen, a fortune 500 company, is a publicly traded multinational biopharmaceutical company with over $36 billion in annual revenue in 2024.

25.     Amgen is a Delaware corporation with its principal offices located at One Amgen Center Drive, Thousand Oaks, California.

26.      Defendant Amgen, Inc is the sponsor of the Plan and the Plan Administrator under 29 U.S.C. § 1002(16). Amgen employs over 30,000 individuals and the Plan, as of December 31, 2024, had over 13,000 participants. Amgen's

**CLASS ACTION COMPLAINT**

employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

27.     At relevant times during the Class Period, Plaintiff paid premiums inflated by Defendant's wrongfully discriminatory policies, including 150 dollars automatically deducted from his pay checks each month, which was in addition to his monthly premium amounts.

### III.     JURISDICTION AND VENUE

28.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

29.     This Court has personal jurisdiction over Defendant because it is headquartered in this District. Defendant has purposefully availed itself of the privilege of conducting business in California.

30.     Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because Defendant is headquartered in this District (in Thousand Oaks, California) and a substantial portion of the statutory breach took place in this District. Additionally, Defendant conducts business and can be found in this District and the Plan is administered in this District.

12
**CLASS ACTION COMPLAINT**

## IV.        AMGEN'S PLAN UNDER ERISA

31.     The Plan is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1), established to by Defendant as an employer to provide participants or their beneficiaries through the purchase of insurance with medical, surgical or hospital care or benefits in the event of sickness or other medical event. The Plan is an employee benefit plan subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a).

32.     Eligible current and former employees of Amgen and their family members can receive health insurance coverage by participating in a medical plan sponsored and administered by Amgen. These medical benefits are offered under the Amgen Inc. Master Benefits Plan.

33.     As sponsor of the Plan, Defendant controls and manages the operation and administration of the Plan, including the creation and distribution of materials describing the Plan. Defendant has a fiduciary responsibility to participants and beneficiaries in the Plan.

34.     By the end of 2024 the Plan covered more than 13,000 participants and their families, and in years previous to that covered a similar number of people. Upon information and belief, due to employee turnover, the total number of unique individuals covered by the Plan during the relevant period is far greater than any single yearly total.

**CLASS ACTION COMPLAINT**

35. Upon information and belief, the number of tobacco users who have enrolled in the Plan reflects that found in the general population of working age adults in the United States and would represent at least 10 percent of Plan participants, resulting in payment of the improper Amgen tobacco surcharge by thousands of individuals in each year from 2020 to present.

## V. ERISA'S ANTI-DISCRIMINATION FRAMEWORK

36. ERISA prohibits any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use.

37. A plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

38. Under ERISA § 505, 29 U.S.C. § 1135, Congress expressly granted the Departments of Labor, Health and Human Services, and Treasury (the "Departments") authority to issue regulations operationalizing the prohibition against discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182 and the Public Health Services Act ("PHSA") § 2705, 42 U.S.C. §

14
**CLASS ACTION COMPLAINT**

300gg-4. This authority empowers the Departments to "prescribe such regulations as [they] find[] necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Departments' authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

39.    The statutory language of ERISA permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention" (29 U.S.C. § 1182(b)(2)(B)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

40.    In 2013, The Departments approved Final Regulations (effective Jan. 1, 2014) providing criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA and the PHSA.[4] These regulations

---

[4] *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013).

15
**CLASS ACTION COMPLAINT**

specifically include requirements for outcome-based wellness programs[5] like tobacco cessation programs.

41.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

a. Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

b. Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii).

c. Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided

---

[5] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v)

16
**CLASS ACTION COMPLAINT**

to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

d. Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

e. Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated if that physician deems a plan standard not medically appropriate for that individual. *See* § 2590.702(f)(4)(v).

42.    Regulations promulgated by the Departments provide valuable insight into each of the criteria, and exemplars illustrate a clear intent that a tobacco user surcharge must comply with the statute's requirements in a manner that both promotes health and prevents discriminatory practices under ERISA. § 2590.702(f)(4)(vi). For example,

a. a Tobacco surcharge program that is otherwise compliant in the first year offered to a participant, but which thereafter requires the participant to stop smoking, has failed to offer a reasonably designed plan under §

17
**CLASS ACTION COMPLAINT**

2590.702(f)(4)(iii), and has also failed to provide a reasonable alternative standard under § 2590.702(f)(4)(iv). *See* § 2590.702(f)(4)(vi), Example 7 – Tobacco Use Surcharge with alternative program requiring actual cessation."

    b.  a Tobacco surcharge program which offers participants the ability to avoid the paying such charge by participating in a tobacco cessation program, but requires the participant "to find a program, pay for it, and provide a certificate of completion to the plan" has not offered a reasonable alternative standard that complies with paragraphs (f)(4)(iii) and (iv) of this section and the program fails to satisfy the requirements. *See* § 2590.702(f)(4)(vi), Example 8 – Tobacco Use Surcharge with smoking cessation program alternative that is not reasonable.

43.    The regulations also provide in detail that, for outcome-based programs, the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* 78 Fed. Reg. 33158, 33165. Regulations describe this requirement and provide a clear example:

> "the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)."

18
**CLASS ACTION COMPLAINT**

*Id*. 33163

44.    A reward, as defined by the PHSA, expressly may be in the form of a discount or rebate of a premium or contribution, a waiver of all or part of a cost-sharing mechanism (such as deductibles, copayments, or coinsurance), ***the absence of a surcharge,*** or the value of a benefit that would otherwise not be provided under the plan." 42 U.S.C. § 300gg-4(j)(3)(A) (emphasis added).

45.    The regulations provide that outcome-based wellness programs, such as those involving tobacco cessation programs, are compliant under ERISA ***only if all regulatory requirements are satisfied***. *See* 29 C.F.R. § 2590.702(f)(4) (emphasis added).

46.    The Departments explained, "these rules set forth criteria for an affirmative defense that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. 78 Fed. Reg. 33158, 33163. (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan qualifies as a "program[] of health promotion and disease prevention" that satisfies all the necessary regulatory criteria. *See Cunningham v. Cornell Univ.*, *supra*.

47.    The criteria established by the Final Regulations are not optional. The Plan may only impose health-based premium differentials if it satisfies the requirements

therein. *See* 78 Fed. Reg. 33158, 33160 ("these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention . . . *that must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination* . . . .") (emphasis added).

48.     The regulations also explicitly state that a plan or issuer "must disclose *in all plan materials* describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C § 300gg-4(j)(3)(E). Thus, plans that charge their participants more and fail to provide the requisite notice violate these requirements, preventing these wellness programs from qualifying for the safe-harbor exception and establishing them as discriminatory wellness program.

49.     The Departments explained that documents that merely "mention" a program, without describing its terms, need not include the notice. However, any plan materials that reference a premium differential based on tobacco use or other health-contingent standard must contain the required disclosure. 78 Fed. Reg.

**CLASS ACTION COMPLAINT**

33158, 33166 ("a plan disclosure that references a premium differential based on tobacco use … is a disclosure describing the terms of a health-contingent wellness program and, therefore, must include this disclosure."). Thus, enrollment materials or benefit guides that reference higher premiums or surcharges based on tobacco use, but omit the required disclosure notice regarding a reasonable alternative standard, including omitting contact information and a statement that a participant's physician's recommendations will be accommodated, violate this rule.

50.    As explained below, Amgen's benefits guides and benefit decision guides, issued widely to inform employees of their available health benefits, fail to provide any notice of an available reasonable alternative standard despite making specific reference to a premium differential based on tobacco use, and are therefore woefully noncompliant with ERISA's requirements.

51.    Amgen's Tobacco Surcharge program fails to meet nearly all of the regulatory criteria and, therefore, Defendant cannot qualify for the statutory exception allowing for premium differentials. Amgen's noncompliant wellness program fundamentally fails to comply with ERISA's regulatory requirements because it does not offer an alternative standard at least once a year that provides those who satisfy that standard with the "full reward" and fails to provide notice of the same or in all the Plan materials discussing the tobacco surcharge.

## VI.    AMGEN'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI DISCRIMINATION RULES

52.    Amgen's tobacco surcharge violates ERISA because it unlawfully discriminates on the basis of a health status-related factor, fails to provide the requisite reasonable alternative standard, and fails to comply with statutory and regulatory notice requirements.

53.    A plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health-status related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

54.    Defendant's tobacco surcharge violates this provision. Any plan participant, including Plaintiff and all others similarly situated, who disclosed that they were a tobacco user during the Plan's enrollment period, was required to pay an additional premium or contribution every month based on a "health status-related factor" — their use of tobacco products. Had Plaintiff refused to pay the tobacco surcharge, he would have risked his initial or continued enrollment in the Plan.

55.    The tobacco surcharge extracted by Amgen is $150 per enrolled person, and is assessed to both the employee and each member of their family for whom tobacco use is disclosed. This fee amounts to $1,800 dollars per tobacco user, per year,

22
CLASS ACTION COMPLAINT

far greater than amounts charged or awarded in other surcharge or award-based wellness plans. 78 Fed. Reg. 33158, 33172. The penalty amount is especially egregious in light of studies showing that even a modest surcharge discourages participation in health plans.

56.     What is more, the Plan requires any who elect the status of "tobacco user" to pay the monthly penalty for the entire year, and it can only be avoided upon changing that election to non user, implicitly requiring cessation, during the next year's enrollment period.

57.     The status reported by the participant remains in effect, even if the employee or family member thereafter becomes tobacco-free, until the next annual enrollment deadline. The Plan therefore provides no incentive to a tobacco user to cease tobacco use until the next enrollment period, and no relief to a plan participant that quits tobacco use during the Plan year and must continue to pay the unjust penalty.

58.     Plan participants who do not use tobacco and do not elect "tobacco user" status are not compelled to pay the $150 per month tobacco surcharge at any point in the year.

59.     The Plan thus requires Plaintiffs and all other similarly situated to pay a premium or contribution greater than the premium or contribution of a similarly situated individual enrolled in the plan based on a health factor tobacco use.

23
**CLASS ACTION COMPLAINT**

## VII.    AMGEN'S TOBACCO SURCHARGE LACKS ANY REASONABLE ALTERNATIVE STANDARD

60.    Upon information and belief for the last six (6) or more years, Defendant has failed and continues to fail to provide plan enrollees with a reasonable alternative standard that would enable and the physician-accommodation statement.

61.    Defendant's participant-facing materials, including benefits guides released to educate prospective Plan participants describe the tobacco surcharge and the increased premium contributions imposed on participants, but do not provide any description of a reasonable alternative standard, much less one that would guarantee that a participant would allow the participant to avoid the surcharge for the full year, with retroactive reimbursement or otherwise. Nor is there any mention that the participant's physician's recommendations will be accommodated.

62.    In its plan material entitled "Your 2023 Benefit Decision Guide", which is a readily accessible source of information regarding numerous aspects of the group health insurance plan benefits offered to employees of Amgen, Defendant provides under the heading "Medical Surcharges" that "staff members in certain situations are asked to help share the cost of coverage", and states that certain Plan participants are required to pay a tobacco surcharge of "$150 per month if a staff member uses tobacco, tobacco cessation resources are available on the MyAmgen Wellness page and the Amgen Benefits Center." Rather than provide any reference to a reasonable alternative Standard the surcharge can only be avoided if the participant quits using tobacco. The

24

**CLASS ACTION COMPLAINT**

same language appears in Benefit Decision Guides in 2021 and 2022. Upon information and belief, all Benefit Decision Guides issued by Amgen during the relevant period contain the same or substantially similar language as those issued from 2021 to 2023.[6]

63.     The Amgen Benefit Decision Guide, a key example of plan materials provided by Amgen to its employees and a primary source of information to enrollees in the Plan, provides no other information from which a participant could investigate, find, locate, much less fulfill, criteria of an undisclosed reasonable alternative standard, and provides only the vague promise that tobacco cessation resources are available, without stating that a plan participant can avoid the surcharge by completing a cessation program.

64.     The Regulations provide a stark comparator to the language of the Benefit guide in Example 6 to under 29 C.F.R. § 2590.702(f)(4)(vi) which outlines generally the requirements on a group health plan that offers a hypothetical, compliant tobacco surcharge program:

> In conjunction with an annual open enrollment period, a group health plan provides a premium differential based on tobacco use, determined using a health risk assessment. The following statement is included in all plan materials describing the tobacco premium differential: "Stop smoking today! We can help! If you are a smoker, we offer a smoking cessation

---

[6] The 2021 edition of Amgen's Benefit decision guide, which contains a summary of "benefits changes for 2021", including changes to other surcharge programs, does not identify any changes to the tobacco surcharge.

**CLASS ACTION COMPLAINT**

program. If you complete the program, you can avoid this surcharge." The plan accommodates participants who smoke by facilitating their enrollment in a smoking cessation program that requires participation at a time and place that are not unreasonably burdensome or impractical for participants, and that is otherwise reasonably designed based on all the relevant facts and circumstances, and discloses contact information and the individual's option to involve his or her personal physician. The plan pays for the cost of participation in the smoking cessation program. Any participant can avoid the surcharge for the plan year by participating in the program, regardless of whether the participant stops smoking, but the plan can require a participant who wants to avoid the surcharge in a subsequent year to complete the smoking cessation program again.

65.    The regulations highlight the ways that the tobacco surcharge described in Example 6 satisfies the requirements of ERISA on an outcome-based wellness program, like that implemented by Amgen, in which the initial standard for obtaining a reward is dependent on the results of a health risk assessment (a measurement, test, or screening).

66.    The program in Example 6 is reasonably designed under 29 C.F.R. § 2590.702 (f)(4)(iii) because the plan provides a reasonable alternative standard (as required under paragraph (f)(4)(iv)) to qualify for the reward to all tobacco users, in that case, a smoking cessation program, which is paid for by the plan and in which participation is facilitated, at a time and place that are not unreasonably burdensome or impractical for participants. The participant can also earn the "full reward" by avoiding the surcharge for the plan year by participating in the program, regardless whether the participant is actually able to quit.

26
**CLASS ACTION COMPLAINT**

67.     The Example 6 plan also meets the strict notice requirements under ERISA regulations, providing **in all materials describing the terms of the program,** the availability of the reasonable alternative standard including contact information and the individual's option to involve his or her personal physician.

68.     Unlike Example 6 of the Regulations, Amgen does not provide participants with any reasonable alternative standard to avoid the tobacco surcharge it imposes on participants. There is no smoking cessation program, waiver, or alternative route for tobacco users to obtain the "full reward" (i.e., avoiding the surcharge). The only way for smokers to avoid the surcharge is to quit smoking and change their tobacco status during the next open enrollment. Thus, tobacco users are penalized based solely on their status as smokers, which violates ERISA's non-discrimination provisions.

69.     Unlike Example 6, Amgen did not include clear and specific notice of the availability of a reasonable alternative standard in all Plan materials discussing the surcharge. Amgen did not state in its plan materials that an alternative standard (or waiver) was available, and Amgen did not provide contact information for obtaining the alternative standard. Nor did Amgen include a statement that the Plan would accommodate the recommendations of the participant's personal physician regarding the medical appropriateness of the alternative standard.

**CLASS ACTION COMPLAINT**

70. If Amgen had provided proper notice of a compliant reasonable alternative standard, Plaintiff and all other similarly situated could have availed themselves of that alternative and avoided Amgen's tobacco surcharge. Thus, Amgen's lack of notice deprived participants of the opportunity to exercise their rights under ERISA and directly contributed to the harm suffered by Plaintiffs and all other similarly situated participants in the Plan.

71. By failing to meet these requirements, Amgen's tobacco surcharge is discriminatory, and in clear violation of ERISA and its implementing regulations.

72. In promulgating the implementing regulations, "the Departments intend that the requirement to provide a reasonable alternative standard will eliminate instances where wellness programs serve only to shift costs to higher risk individuals and increase instances where programs succeed at helping high risk individuals improve their health." 78 Fed. Reg. 33158, 33172.

73. Amgen's surcharge however, is little more than an impermissible cost-shifting scheme, providing ill-gotten gains in the form of wrongfully collected monthly fees, which rather than enhance the health and well-being of participants in the Plan, provide an unlawful revenue stream for Amgen at the expense of its employees.

## VIII. AMGEN CANNOT ASSERT A DEFENSE UNDER ERISA'S SAFE HARBOR

74. Amgen's wellness program violates ERISA and its implementing regulations by failing to provide a "program[] of health promotion or disease

28

**CLASS ACTION COMPLAINT**

prevention" that complies with the regulatory framework. To qualify for ERISA's safe harbor, a wellness program must offer a clearly defined, reasonable alternative standard and ensure that all participants who satisfy it receive the full reward. Amgen's Plan fails to meet these requirements. It does not clearly offer a reasonable alternative standard and **fails to provide proper notice of the alternative standard in all plan materials discussing the surcharge.**

75.    There is no way for tobacco-using participants to avoid Amgen's egregiously expensive $1,800 annual premium increase aside from quitting tobacco and being nicotine free. Because Amgen's plan materials, specifically its Enrollment Benefits Decision Guides, fail to explain the program in full, it is unclear whether participants even have the option of having the surcharge removed on a *prospective* basis, despite regulatory requirements that the "full reward" must be provided to "all similarly situated individuals" who satisfy a reasonable alternative standard.

76.    By forcing participants to quit smoking prior to enrollment and offering no path to receive a refund, the Plan fails to offer reasonable alternative standard. Amgen's surcharge program violates nearly all 5 factors[7] evaluated under ERISA's regulatory framework. It fails the requirement to provide employees with at least one opportunity

---

[7] Despite the amount of the $1,800 annual penalty, Plaintiff does not here allege that the tobacco surcharge exceeds 50% of the cost of employee-only coverage as prohibited under 29 C.F.R. § 2590.702(f)(4)(ii).

**CLASS ACTION COMPLAINT**

per year to qualify for an alternative standard, does not ensure that all similarly situated individuals who satisfy the alternative standard receive a full refund, and **fails to provide clear notice of the alternative standard in all plan materials that reference the surcharge**. These deficiencies make Amgen's surcharge an impermissible cost-shifting scheme rather than a compliant health promotion program.

77.    Because the Plan fails to *offer* a reasonable alternative standard *in all plan materials that reference the surcharge*, Amgen fails to provide participants with notice under 29 C.F.R. § 2590.702(f)(4)(v). Further, Amgen's materials addressing the tobacco surcharge fail to include a statement that a participant's physician's recommendations will be accommodated, as required under ERISA regulations. This omission not only fails to meet the regulatory requirements under ERISA but also undermines the purpose of wellness programs, which is to promote health outcomes in an inclusive and equitable manner. By failing to include this critical information in its materials, Defendant prevented participants, particularly those who may have unique medical conditions or disabilities, from knowing that they have the option to work with their healthcare provider to identify and recommend a reasonable alternative standard tailored to their individual needs.

78.    Amgen's wellness program fundamentally fails to comply with ERISA's regulatory requirements because it does not offer an alternative standard at least once a year that provides those who satisfy that standard with the "full reward" and fails to

30
**CLASS ACTION COMPLAINT**

provide notice of the same or in all the Plan materials discussing the tobacco surcharge. Under ERISA, a wellness program cannot claim safe harbor protection unless every criterion of the regulatory framework is satisfied. *See* 29 C.F.R. § 2590.702(f)(4). Because the Plan fails to meet nearly all of the regulatory criteria, Amgen cannot qualify for the statutory exception allowing for premium differentials.

## IX.        CLASS ALLEGATIONS

79.    Plaintiffs brings this action on behalf of Plaintiffs and the Class, which is defined as participants in and beneficiaries of the Plan that paid the improper surcharge in the six years prior to the filing of this complaint.

80.    The Class excludes Defendants; any person who was or is an officer, director, employee, or a shareholder of 5% or more of the equity of any Defendant or is or was a partner, officer, director, or controlling person of any Defendant; the spouse or children of any individual who is an officer, director or owner of 5% or more of the equity of any Defendant; Plaintiff's counsel; judges of the Court in which this case is pending and their current spouse and children; and the legal representatives, heirs, successors and assigns of any such excluded person.

81.    The Class Period includes the six years prior to the date of the filing of this Complaint through the date of judgment.

82.    The members of the Class are so numerous, consisting of thousands of members, not including their spouses and dependent beneficiaries, who, upon

information and belief, are sufficiently dispersed geographically such that joinder of all members is impracticable. The issues of liability are common to all members of the Class and are suitable to common resolution.

83.    Plaintiff's claims are typical of the claims of other members of the Class because their claims arise from the same events, practices and/or courses of conduct described above.

84.    Plaintiff will fairly and adequately represent and protect the interests of the Class.

85.    Plaintiff does not have any interests antagonistic to or in conflict with those of the Class.

86.    Defendant has no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

87.    Plaintiff is represented by counsel experienced in prosecuting ERISA class actions and with particular experience and expertise in litigation involving ERISA breaches of fiduciary duty.

88.    The requirements of Fed. R. Civ. P. 23(b)(1)(A) are satisfied. Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and its participants. This action challenges whether Defendants acted consistently with their obligations under ERISA as to the Plan as a whole. As a result, prosecution of separate

actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

89.    The requirements of Fed. R. Civ. P. 23(b)(1)(B) are also satisfied. Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the Plan even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

90.    The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied as to the Class because Defendants have acted and/or failed to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to the Class as a whole. This action challenges whether Defendants breached their fiduciary duties, which would be violations of ERISA as to the Plan as a whole and as to the Class as a whole. A portion of the relief sought in this case primarily consists of policy changes that would affect both the class as a whole and every plan participant, since removal of the tobacco use disclosure requirement would affect all plan participants. As ERISA is based on trust law, the monetary relief sought consists of equitable monetary relief that

would either flow directly from the declaratory or injunctive relief or flow as a necessary consequence of that relief.

91.    The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. The common questions of law and fact concern whether Defendants breached their fiduciary duties to the Plan. As the members of the Class were participants in that Plan, they paid the unlawfully implemented and discriminatory tobacco surcharge as result of Defendants breach of that duty. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. As relief and any recovery will be on behalf of the Plan, common questions as to remedies and damages will likewise predominate over any individual issues.

92.    A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims generally are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire Plan. Class certification is a superior method of proceeding because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the Plan.

**CLASS ACTION COMPLAINT**

93.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE (Violation of 29 U.S.C. § 1182 and 29 C.F.R. § 2590.702)

94.     Plaintiffs hereby reallege by reference each of the foregoing allegations.

95.     To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge.

96.     Defendant unlawfully imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums of $150 monthly on participants who use tobacco, without complying with the regulatory requirements, Defendant is violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1). This discrimination stems from Defendant's decision not to provide a reasonable alternative standard that ensures participants who satisfy that standard are provided with the full reward, in violation of ERISA and the Final Regulations.

97.     ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related

35
**CLASS ACTION COMPLAINT**

factor." *See* 29 U.S.C. § 1182(b). Defendant's Plan violates this prohibition by failing to offer an opportunity to qualify for the alternative standard at least once a year; failing to provide a reasonable alternative standard; failing to provide an alternative standard that provides those who satisfy that standard with the "full reward;" and failing to provide proper notice of the alternative standard. Thus, Defendant's tobacco surcharge program fails to satisfy nearly all the regulatory requirements to qualify for the statutory safe-harbor, 29 U.S.C. § 1182(b)(2)(B).

98. Defendant's imposition of the tobacco surcharge violates ERISA § 702 and the Final Regulations, including but not limited to 45 C.F.R. § 146.121(f)(4) and 29 C.F.R. § 2590.702(f)(4). Defendant's wellness program is non-compliant because it does not comply with most of the regulatory framework

99. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy several of the five criteria that plans must comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is,

**CLASS ACTION COMPLAINT**

therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

100.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress Defendant's violations of ERISA's anti-discrimination provisions outlined in § 1182(b) and § 300gg-4, including but not limited to injunctive relief, restitution, and any other relief necessary to remedy Defendant's unlawful conduct, as set forth in the Prayer for Relief.

## COUNT II

### FAILURE TO NOTIFY OF REASONABLE ALTERNATIVE STANDARD FOR AVOIDING TOBACCO SURCHARGE
(Violation of 29 U.S.C. § 1182 and 29 C.F.R. § 2590.702)

101.   Plaintiff hereby realleges by reference each of the foregoing allegations.

102.   To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge.

103.   Defendant's tobacco surcharge is not and was not a permissible wellness program, because Amgen did not give statutorily required notice of any reasonable alternative standard, in that the Plan's written materials discussed the tobacco surcharge, but did not notify participants and beneficiaries that they would be eligible to receive the full reward of the tobacco surcharge program for the plan year, including the retroactive reimbursement of any surcharge fees already paid that plan year, upon satisfying an alternative standard, nor did Defendant provide a notice that the

37
**CLASS ACTION COMPLAINT**

recommendations of a participant's personal physician regarding tobacco use would be accommodated.

104. Defendant cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

105. Amgen's tobacco surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor and is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b) which Plaintiffs and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

106. Plaintiffs and class members were required to pay an illegal fee, and Amgen collected that fee from them in violation of the law. Equity requires that those funds be returned.

## COUNT III

### BREACH OF FIDUCIARY DUTY
(Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)

107. Plaintiff hereby realleges by reference each of the foregoing allegations.

108. At all times relevant to this lawsuit, Amgen was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting management of the medical benefits plans and disposition of their assets by holding in trust the funds collected from the tobacco

**CLASS ACTION COMPLAINT**

surcharge, and had discretionary authority and discretionary responsibility in the administration of the medical plan.

109. ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "act for the exclusive benefit of plan beneficiaries." *Howard v. Shay,* 100 F.3d 1484, 1488 (9th Cir. 1996)

110. Each year, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management and administration of the Plan and its surcharge programs, including the decision not to offer a reasonable alternative standard. Each year, Defendant exercised discretionary authority with respect to the administration and implementation of the unlawful surcharge program by administering a surcharge program without providing reasonable alternatives that allowed "all similarly situated individuals" to avoid the surcharge for the entire plan year, dictated the eligibility criteria and penalties for noncompliance, and failed to provide participants with the necessary notices related to the reasonable alternative standard.

111.   Amgen controlled and disseminated to all employees the contents of the Benefits Guide discussing the tobacco surcharge but failed to notify participants of a reasonable alternative standard by which they could avoid the entire year of surcharges regardless of when they satisfied an alternative standard in violation of the regulations. Further, Amgen failed to adequately and regularly review the terms of its tobacco wellness program and the accompanying communications to participants to ensure they complied with ERISA and the regulations. Year after year, Defendant failed to properly institute safeguards against administering a program that violated the statute and implementing regulations. These actions reflect Amgen's active role in administering a non-compliant "program[] of health promotion and disease prevention," resulting in an unlawful and discriminatory tobacco surcharge in violation of ERISA.

112.   Amgen breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. Amgen acted disloyally by causing Plaintiff and members of the Class to pay tobacco surcharges that were unlawful because they were associated with a non-compliant wellness program.

113.   Defendant breached its fiduciary duties by:

   a. failing to properly disclose material information about the wellness programs to participants, thereby misleading or depriving them of the ability to make informed decision;

40
**CLASS ACTION COMPLAINT**

b. administering a wellness program that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D);

c. acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2);

d. and by failing to act prudently and diligently to review the terms of the wellness programs (and the Plan) and Plan communications to ensure they properly complied with the regulatory requirements in violation of 29 U.S.C. § 1104(a)(1)(B).

114. These breaches caused Plaintiff and the Class to incur unlawful and discriminatory surcharges. Had Defendant conformed with their fiduciary duties under ERISA, they would have offered a reasonable alternative standard at least once each plan year that allowed all similarly situated individuals to obtain the "full reward," and would have reviewed the terms of the Plan and the surcharge program, as well as the communications sent to participants regarding that surcharge program, to ensure they complied with ERISA and the implementing regulations

115. Amgen also breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of the law and in violation of the terms of the Plan, as

**CLASS ACTION COMPLAINT**

the receipt of additional funds reduced its own costs associated with funding the plan and forestalled its own obligations to make contributions thereto.

116.   Upon information and belief, Defendant retained the amounts of the surcharges thereby increasing its own monies. By mingling the additional money received from the surcharges with its own assets, Defendant dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). As a result of the imposition of the unlawful and discriminatory tobacco surcharge, Defendant enriched itself at the expense of the Plan, resulting in it receiving a windfall. Therefore, Defendant's collection of the tobacco surcharge diminished the amount it had to contribute to the plan, thereby benefiting itself and harming the Plan.

117.   Despite being unlawful for the reasons already discussed above, Amgen was duty-bound to deposit the tobacco surcharge amounts into the Plan once they were collected from Plaintiffs and other similarly situated participants. Instead, on information and belief, Amgen took those amounts, did not deposit them into the Plan, used them to offset its own contribution amounts, and otherwise used them to profit at the expense of the Plan.

118.   As a result of the imposition of the tobacco surcharge, Amgen enriched itself at the expense of the Plan and its participants, thereby resulting in a windfall to Amgen. In so doing Amgen breached its fiduciary duties under ERISA in that it:

42
**CLASS ACTION COMPLAINT**

a. failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);

b. failed to discharge its duties in accordance with the documents and instruments governing the Plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D);

c. failed to ensure that the assets of the Plan did not inure to the benefit of the employer, in violation of ERISA. *See* 29 U.S.C. § 1103(c).

d. caused the Plan to engage in transactions that Amgen knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the health plan, in violation of ERISA. *See* 29 U.S.C. § 1106(a)(1)(D);

e. dealt with assets of the Plan in Amgen's own interests in violation of ERISA. *See* 29 U.S.C. § 1106(b)(1); and

f. acted on behalf of a party whose interests were averse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of ERISA. *See* 29 U.S.C. § 1106(b)(2).

43
**CLASS ACTION COMPLAINT**

119. As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

120. Plaintiffs and class members are authorized to recover individual equitable relief to remedy these breaches under 29 U.S.C. § 1132(a)(3).

121. Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in their favor and against Amgen as follows:

A. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are proper class representatives, and appoint Plaintiff's counsel as Class Counsel;

B. That the Court order Amgen to reimburse all persons who paid the tobacco surcharge within the class period.

44
**CLASS ACTION COMPLAINT**

C. That the Court order disgorgement and/or restitution of all payments unlawfully assessed by Amgen, or, alternatively, the profits earned by Amgen in connection with its receipt of such unlawful fees;

D. That the Court grant a declaratory judgment holding that the acts of Amgen described herein violate ERISA and applicable law, as well as the terms of the plan;

E. That the Court enter a permanent injunction against Amgen prohibiting it from collecting a tobacco surcharge unless and until the company revises the surcharge to comply with all ERISA statutory requirements;

F. That the Court order Amgen to provide all accountings necessary to determine the amounts it must make good to the plan and to plan participants and beneficiaries;

G. That the Court surcharge against Amgen all funds it collected in violation of ERISA and the terms of the plan;

H. That the Court find and adjudge that Amgen is liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duties, to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty, and grant all other proper relief authorized by 29 U.S.C. § 1109, including removal and replacement of the fiduciary;

**CLASS ACTION COMPLAINT**

I.  That the Court impose a constructive trust on profits received by Amgen as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiff and the class can make claims for equitably vested benefits;

J.  That the Court award Plaintiff and the class all damages available at law in an amount to be determined at trial;

K.  That the Court award reasonable attorneys' fees, costs, and expenses as provided by law;

L.  That the Court order the payment of interest to the extent it is allowed by law; and

M. That the Court grant all other equitable, remedial, and legal relief as it deems just and proper under the circumstances.

Dated: April 21, 2026

Respectfully Submitted,

By: _/s/ John J. Nelson_
      John J. Nelson (SBN 317598)
      jnelson@milberg.com
      **MILBERG PLLC**
      280 S. Beverly Drive-Penthouse
      Beverly Hills, CA 90212
      Telephone: (858) 209-6941

46
**CLASS ACTION COMPLAINT**

John D. Hughes*
jhughes@milberg.com
**MILBERG PLLC**
800 South Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: 202-932-7015

*Attorneys for Plaintiff Sanjay Sharma
and the proposed class*

47
**CLASS ACTION COMPLAINT**